7157

## CLIO GIN CO. v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—NEGLIGENCE.—Under proof in this case, while there was shown to have been negligent delay in delivery of telegram, plaintiff by reason of such delay sustained no direct and proximáte damages, as there was a total failure of testimony tending to show the defendant had any knowledge that the telegram, which was plain and intelligible itself, meant something more than the natural import of its terms.

2. AMENDING PLEADINGS.—Motion, after nonsuit granted, to amend complaint to make allegations conform to proof, should not be granted, when it involves striking out material allegations and inserting other and essential allegations.

Before ALDRICH, J., Marlboro, April Term, 1908. Affirmed.

Action by Clio Gin Co. against Western Union Tel. Co. From order of non-suit, plaintiff appeals.

*Messrs. Livingston & Muller,* for appellant, cite: *Amending Pleadings:* 4 Ency., 749, 742, 31 S. E. 840; 22 S. E. 524; 47 S. C., 488; 80 S. C., 213; 51 S. C., 412; 55 S. C., 90; 68 S. C., 419; 65 S. C., 308. *Liability of defendant for unreasonable delay:* Joyce on Elec. L., secs. 778, 852, 955; 32 S. W., 707; 46 Am. R., 715; 73 Ga., 255; 53 S. C., 410.

*Messrs. Geo. H. Fearons, Willcox & Willcox, Henry E. Davis, Townsend & Rogers,* contra.

*Messrs. Fearons, Willcox & Willcox* and *Davis* cite: *Right to recover damages:* 76 S. C., 348; 72 S. C., 293; 70 S. C., 418, 539; 25 S. C., 68; 40 S. C., 524; 71 S. C., 29, 82, 211; 76 S. C., 301, 338; 74 S. C., 286; 79 S. C., 310; 10 Am. St. R., 778; 70 S. C., 19; 53 S. C., 410; 60 S. C., 201; 65 S. C., 490; 76 S. C., 348; 124 U. S., 444. *Amending complaint:* 31 S. C., 199; 49 S. C., 518; 80 S. C., 213; 81 S. C., 574. ·

April 9, 1909.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The plaintiff appeals from an order of nonsuit in this action to recover damages for negligent delay in delivering a telegram sent by South Carolina Cotton Oil Company, Columbia, S. C., to plaintiff at Clio. S. C., on the afternoon of January 4, 1904, and not delivered until the morning of January 6, 1904, the message being as following: "Will pay nineteen dollars and commissions for seed shipped by the 15th inst."

Assuming that there was a negligent delay in delivering the telegram, the real question was whether there was testimony that plaintiff sustained any damage as the direct and proximate result of such negligence.

The complaint alleged in part: VII. "That the plaintiff was engaged in, among other things, the purchase of cotton seed, and on the 5th day of January, 1904, had offered to it and had the option, privilege and opportunity of purchasing fifty-eight thousand bushels of cotton seed at and for the price named in said telegram.

VIII. "That by reason of the careless and negligent conduct of the defendant in failing to deliver said message within a reasonable time, conveying to the plaintiff the information therein contained, the plaintiff was prevented from offering, and did not offer, to pay nineteen dollars per ton for cotton seed on said 5th day of January, A. D. 1904, in consequence of which plaintiff did not buy said fifty-eight thousand bushels of cotton seed, but the same were sold to other party or parties, who offered and paid such price for same.

IX. "That this plaintiff had a fixed and determined commission and profit by agreement on all cotton seed which it bought which would have included the lot hereinbefore mentioned, all of which the defendant well knew, and owing to the careless and negligent conduct of the defendant in failing to deliver said telegram within a reasonable time,

this plaintiff did not purchase said lot of fifty-eight thousand bushels and thereby was deprived of making and realizing such profit and commission, to its damage eleven hundred and sixty dollars."

It appears that the market price of cotton seed at Clio, S. C., just previous to January 4, 1904, was from 22 to 25 cents per bushel; that plaintiff who had been buying seed for the Southern Cotton Oil Company telegraphed for instructions and kept out of the market awaiting response to its telegram. There was testimony that if the telegram in question had been promptly delivered, plaintiff could have purchased about 30,000 bushels of cotton seed on January 5th at 30 cents per bushel, or $20 per ton, one dollar per ton more than the telegram in terms authorized. According to the testimony, plaintiff's commission would have been one dollar per ton, so that to have purchased at all, plaintiff would have been compelled to sacrifice the entire amount of the commission and have its trouble and expense for nothing. But it is contended that plaintiff had an agreement with the Southern Cotton Oil Company to buy seed for them at one dollar per ton for commission and fifteen cents per ton for storage, and that in any event plaintiff sustained a loss of fifteen cents per ton.

In the first place, there was no evidence that the defendant company had any knowledge that plaintiff was liable to sustain any loss by reason of storage, and certainly the face of the telegram negatives any idea that loss of storage was within the contemplation of the parties. Loss of compensation for storage was not a necessary result of defendant's delict and would fall within the class of special damages, due to special circumstances, as to which it was necessary for plaintiff to allege and prove that defendant had knowledge at the time of the filing of the telegram. *Mood* v. *Telegraph Co.,* 40 S. C., 526, 19 S. E., 67.

But in the next place, if it should be conceded that a loss of fifteen cents per ton for storage was in contemplation of

the parties, it must be remembered that plaintiff, in order .
to avail itself of the contents of the telegram was required
to ship the cotton seed by the 15th of January.   This re-
quired the procuring of the necessary cars and loading same
by that date from wagons or warehouses.   There was no
evidence that plaintiff, within the time allowed, could have
procured the necessary cars, thirty or more, an average car
load being probably about 1,000 bushels or 15 tons of seed,
and have loaded them within the time required.   The Court
is bound to take notice that cotton seed cannot be loaded
upon cars from warehouses or wagons without expense.
There was also danger of loss to plaintiff by waste or in
weights in the handling, except by the greatest care and
oversight.   Now, in view of all these matters, the Court
can not say there is reasonable ground for believing that
plaintiff could have suffered any material certain loss by being
deprived of the privilege of storing or handling cotton seed
at fifteen cents per ton, when such privilege was burdened
with a certain loss and expense reasonably equal to if not
greater than that amount.   A new trial on this ground would
not comport with the practical administration of justice.

It is finally argued that there was evidence of an agree-
ment between the Southern Cotton Oil Company and plain-
tiff, that plaintiff in buying cotton seed for that company
could give the designated market price for seed and still
have a leverage or margin of two cents per bushel, that is
to say, if the Southern Cotton Oil Company authorized
plaintiff to buy seed at 28 1-2 cents per bushel, plaintiff could
stay in the market and buy for them as long as cotton seed
did not advance beyond 30 1-2 cents per bushel, the point
being that if the telegram had been promptly delivered,
plaintiff could have paid the price of thirty cents per
bushel and still have been entitled to the commission of one
dollar per ton, and that by the delay in delivery plaintiff
lost the commissions on the seed it would have purchased.

There was nothing on the face of the message to show, nor does it appear to have been within the knowledge of defendant, that there was such a contract between the sender and sendee of the message. The plain terms of the message negatives the idea that plaintiff was authorized to pay more than $19 per ton for seed and receive therefor the commissions. The case in this aspect fails because of the rule stated that in order to affect the telegraph company with liability for injury arising out of special circumstances, notice of such circumstances should be brought home to the defendant by allegation and proof. The complaint alleged, in conformity with the natural import of the telegram, that by reason of the delay in delivering the telegram, plaintiff was prevented from purchasing cotton seed at nineteen dollars per ton. On this theory of the complaint, there was a failure of proof, as it was undisputed that seed on the day could not have been purchased for less than twenty dollars per ton.

But we have considered the complaint as if it alleged that plaintiff was prevented from purchasing seed at twenty dollars per ton, that is nineteen dollars per ton and one dollar additional consuming commissions, as embraced within the terms of the telegram and the knowledge of the defendant.

At the close of argument by plaintiff's counsel, on the motion for nonsuit, plaintiff's counsel moved that in case the Court reached the conclusion that there was any variance between the allegations and proof that leave be granted to amend the complaint to correspond with the proof. The terms of the proposed amendment do not appear and we are left to speculate as to the exact amendment sought. Judge Aldrich held that the motion came too late under the authority of *Cuthbert* v. *Brown,* 49 S. C., 513, 27 S. E., 485. In that case the Court held that a motion to amend an answer by withdrawing an admission of a material fact and substituting a denial thereof, changing

the nature of the defense, comes too late after the trial gone into and motion for nonsuit refused. This was in principle the situation in the case at bar. To have amended the complaint to conform to the facts proved, after argument on motion for nonsuit which was granted, when the amendment would involve striking out material allegations of the complaint and inserting other material and essential allegations—would have changed plaintiff's claim in conflict with sec. 194, which expressly provides that amendments to conform the pleading to the facts proved may be allowed "when the amendment does not change substantially the claim or defense." *Taylor* v. *Atlantic Coast Line R. R. Co.,* 81 S. C., 574, 62 S. E. Rep., 1113.

But even if the complaint had been amended to conform to the facts proved, so as to allege the special circumstances brought out in the testimony, still nonsuit was proper, as there was a total failure of testimony to show that defendant company had any knowledge that the telegram, which was plain and intelligible itself, meant something other than the natural import of its terms.

The judgment of the Circuit Court is affirmed.